UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO INDEMNITY COMPANY, GEICO GENERAL INSURANCE COMPANY, and GEICO CASUALTY COMPANY,

                Plaintiffs,

-against-

JEAN-PIERRE BARAKAT, M.D., DR. JEAN PIERRE BARAKAT, M.D. (A Sole Proprietorship), PATRIOT MEDICAL CARE, P.C., JPB TODT HILL MEDICAL CARE, P.C., and JOHN DOE DEFENDANTS "1" through "10",

                Defendants.

**MEMORANDUM & ORDER**
**22-CV-07532 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company ("GEICO" or "Plaintiffs") bring this action against Defendants Jean-Pierre Barakat, M.D., Dr. Jean Pierre Barakat, M.D. (A Sole Proprietorship), Patriot Medical Care, P.C., JPB Todt Hill Medical Care, P.C., and John Doe Defendants "1" through "10" (collectively, "Defendants"), alleging that Defendants defrauded GEICO in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO," 18 U.S.C. § 1962(c), (d)), by submitting hundreds of fraudulent bills for no-fault insurance charges. (*See* Compl. (Dkt. 1) ¶¶ 148-248.) Plaintiffs also allege common law fraud and unjust enrichment and seek a declaratory judgment as to all pending bills. (*Id.*)

GEICO now moves for a preliminary injunction to stay all 43 pending no-fault insurance collection arbitrations commenced against GEICO by or on behalf of Defendants Patriot Medical

1

Care, P.C. ("Patriot Medical") and JPB Todt Hill Medical Care, P.C. ("JPB Medical") (collectively, the "PC Defendants").[1] (*See* Not. of Mot. (Dkt. 24-1); Mot. to Stay (Dkt. 24-8) at 1, 9.) Additionally, Plaintiffs request that this court waive their obligation to post security for the injunction. (*See id.* at 21.) For the reasons set forth below, Plaintiffs' motion to stay the arbitration proceedings is GRANTED and Plaintiffs' request that the court waive their obligation to post security is GRANTED.

I. BACKGROUND[2]

A. New York's No-Fault Insurance Scheme

In New York, an insurer is required to provide certain no-fault insurance benefits ("No-Fault Benefits") to the individuals that they insure ("Insureds"). No-Fault Benefits cover up to $50,000 of necessary healthcare expenses that result from automobile accidents. *See* N.Y. Ins. Law §§ 5102(a)(1), 5102(b), 5103; N.Y.

---

[1] Plaintiffs note in their opening brief, and this court takes notice, that Plaintiffs are not moving to enjoin Defendants Dr. Jean Pierre Barakat, M.D. (A Sole Proprietorship) and the PC Defendants (collectively, the "Barakat Practices"), and anyone acting or purporting to act on their behalf, from commencing any further no-fault insurance collection arbitrations or new no-fault collections litigation against GEICO because this court has previously So-Ordered Stipulations in this matter whereby (i) Jean-Pierre Barakat, M.D., the Barakat Practices, and their attorneys, agents and anyone purporting to act on their behalf have already agreed to a preliminary injunction, pending a final resolution of this action, including any appeals, enjoining and restraining them from (a) submitting any billing to GEICO in the names of the Barakat Practices, and/or (b) commencing any new arbitrations before any arbitration tribunal or commencing any lawsuits in any state or local court against GEICO seeking payment of No-Fault benefits on behalf of any of the Barakat Practices. (Mot. to Stay (Dkt. 24-1) at 1 n.1; *see also* Orders Granting Consent Motions to Stay and Enjoin Collection Proceedings (Dkts. 18, 20, 22).)

[2] The following background is taken from the allegations of the Complaint and declarations submitted by GEICO in connection with this motion.

Comp. Codes R. & Regs. ("NYCRR") tit. 11 § 65-1.1. These benefits are provided "to ensure that injured victims of motor vehicle accidents have an efficient mechanism to pay for and receive the health care services that they need." (Compl. ¶ 25.) Consequently, this legislative scheme is designed to "ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts and to provide substantial premium savings to New York motorists." *State Farm Mut. Auto. Ins. Co. v. Herschel Kotkes, M.D., P.C.*, No. 22-CV-03611 (NRM) (RER), 2023 WL 4532460, at *1 (E.D.N.Y. July 13, 2023)).[3]

Insureds may assign their No-Fault Benefits to healthcare providers in exchange for services, and in turn, the provider, rather than the Insured, files no-fault claims with the insurance company directly. *See* NYCRR tit. 11 § 65-3.11(a) (providing that the benefits may be paid only "directly to the applicant" or "upon assignment by the applicant . . . directly to providers of healthcare services"). Providers are prohibited from receiving No-Fault Benefits, however, if they "fail[] to meet any applicable New York State or local licensing requirement necessary to perform such healthcare services." *Id.* § 65-3.16(a)(12); *see also State Farm Mut. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 321 (2005). This includes, *inter alia*, that unlicensed professionals, *i.e.*, non-physicians, may not own or control a medical professional corporation, employ or supervise other professionals, or derive economic benefit from physician services. (Compl. ¶ 32); *see* N.Y. Bus. Corp. Law § 1507. Licensed healthcare services providers, including physicians, are also prohibited from paying or accepting kickbacks in exchange for patient referrals. (Compl. ¶ 33); *see, e.g.*, New York Education Law § 6512, § 6530(11), (18)-(19). Therefore, under New York No-Fault laws, a healthcare provider

---

[3] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

3

is not eligible to receive No-Fault Benefits "if it is fraudulently licensed, if it pays or receives unlawful kickbacks in exchange for patient referrals, if it permits unlicensed laypersons to control or dictate the treatments or allows unlicensed laypersons to share in the fees for the professional services." (Compl. ¶ 35.); N.Y. Ins. Law § 5109; NYCRR tit. 11 § 65-5.0; New York Education Law §§ 6509-a, 6512, § 6530 (18)-(19), 6531.

Moreover, insurers are only given 30 days to review and investigate claims before paying those claims to avoid risk of penalty for denying or delaying a claim. *See* NYCRR tit. 11 § 65-3.8(a); *see also Med. Soc'y of State of N.Y. v. Serio*, 100 N.Y.2d, 854, 861 (2003). After 30 days, interest begins to accrue at a rate of two percent per month. *See* N.Y. Ins. Law § 5106(a). Claimants may dispute unpaid no-fault claims either in a state civil action or, as at issue here, in an arbitration proceeding. *See* NYCRR tit. 11 § 65-4.1, *et seq.*; N.Y. Ins. Law § 5106(a). In arbitration proceedings to recover No-Fault Benefits, the process is "an expedited, simplified affair meant to work as quickly and efficiently as possible," and "[d]iscovery is limited or non-existent." *Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99 (2d Cir. 2014). The proceedings "typically are heard and resolved in minutes, with arbitrators conducting one hearing after another, generally in 15-minute intervals," which makes it difficult for an arbitrator to "consider a pattern of fraudulent treatment." (Kathleen Asmus Declaration ("Asmus Decl.") (Dkt. 24-3) ¶ 16.) In arbitration proceedings for unpaid no-fault claims, the claimant pays a nominal filing fee, but all other costs are paid by the defendant insurance company, including a mandatory non-refundable fee in each case in which it is named as a respondent by a healthcare provider seeking payment on a claim that the insurer has denied. (*Id.* ¶ 14 (citing NYCRR tit. 11 § 65-4.2(c)(1)).)

4

### B. Operation of the Alleged Scheme

According to GEICO, in 2021, Defendant Barakat was recruited by the John Doe Defendants to participate in a complex fraudulent insurance scheme to bill GEICO and other New York automobile insurers for medically unnecessary, experimental, and otherwise reimbursable services. (Compl. ¶ 46.) Based on the arrangement, Barakat would receive a periodic payment in exchange for the use of his name, license, and the tax identification number of the Barakat Practices. (*Id.*) The John Doe Defendants would then enter into illegal financial arrangements with clinic "representatives" or unlicensed persons who controlled various clinics (the "Clinics") in order to gain access to the patients who were allegedly treated at the Clinics. (*Id.* ¶ 50.) No-Fault claims were submitted through approximately 15 different Clinics throughout the New York area using the Barakat name despite the Barakat Practices having no fixed treatment locations, stand-alone practice, support staff, or advertisements. (*Id.* ¶¶ 48-49.)

When an Insured visited one of these Clinics, he or she would be automatically referred by a Clinic representative for treatment, beginning with a pre-determined treatment protocol without regard for the Insureds' individual symptoms or presentment. (*Id.* ¶¶ 58, 70.) Upon receiving a referral, Defendants would conduct an initial consultation that resulted in "virtually every Insured receiving [extracorporeal shockwave therapy ("ESWT")]" immediately following their initial consultation on the same day. (*Id.* ¶ 75.) The Defendants used a billing code for this initial examination that misrepresented the amount of face-to-face time that the examining healthcare professional spent with the Insured, the extent of the physical examination and medical decision-making, the nature and contents of the supporting examination forms, and the existence of consultation reports. (*Id.* ¶¶ 76-108.) After the initial consultation, an Insured would then be subject to multiple follow-up examinations, during which the

5

Defendants would perform medically unnecessary, high-billing value procedures such as ESWT. (*Id.* ¶¶ 109-29.) Notably, the use of ESWT has not been approved by the US Food and Drug Administration ("FDA") for the treatment of back, neck, and shoulder pain; there are no legitimate peer review studies establishing the effectiveness of ESWT, and the Centers for Medicare & Medicaid Services has published coverage guidance for ESWT, including, *inter alia*, that further research is needed to establish the efficacy and safety of ESWT, and that ESWT is not reasonable and necessary for the treatment of musculoskeletal conditions. (*Id.* ¶ 121.) Nevertheless, Defendants routinely submitted reimbursement claims for ESWT treatment within 20 days of an automobile accident, and sometimes for multiple Insureds involved in the same accident. (*Id.* ¶¶ 122-24.)

Between February 15, 2021 and March 3, 2022, Barakat and the John Doe Defendants used Defendant Patriot Medical to bill GEICO and other New York automobile insurers for ESWT. On or about March 8, 2022, the Defendants stopped using Patriot Medical and used Defendant JPB Medical in its place to continue the alleged scheme. (*Id.* ¶ 61.)

Moreover, Defendants submitted bills seeking more than $106,000.00 from GEICO, spread across 43 No-Fault individual arbitration proceedings pending before the American Arbitration Association ("AAA") at the time this motion was filed. (Asmus Decl. ¶ 7.)

### C. Evidence of the Alleged Scheme

In support of its fraud claims, GEICO has submitted a "representative sample" chart, totaling 1,371 entries of allegedly fraudulent no-fault claims submitted by the Barakat Practices (*See* Representative Sample of Barakat's Claims ("Sample of Barakat's Claims") (Dkt. 1-3).) GEICO asserts that it has paid at least $183,000.00 to the Barakat Practices in no-fault claims.

6

(Compl. ¶ 167.) Similarly, GEICO included representative samples of allegedly fraudulent no-fault claims submitted by Patriot Medical (1,448 entries) and JPB Medical (291 entries). (*See* Representative Sample of Patriot Medical Care, P.C.'s Claims ("Sample of Patriot Medical's Claims") (Dkt. 1-4); Representative Sample of JPB Todt Hill Medical Care, P.C.'s Claims ("Sample of JPB Medical's Claims") (Dkt. 1-5).) GEICO further asserts it has already paid Patriot Medical $449,000.00, and JPB Medical $12,000.00 in no-fault claims. (Compl. ¶¶ 192, 210.) GEICO seeks reimbursement of the more than $644,000.00 it has paid Defendants, (see *id.* ¶¶ 157-248), in addition to a declaration that it need not pay the more than $820,000.00 in pending and unpaid no-fault billing. (*Id.* ¶¶ 148-56.)

Subsequent to the filing of the Complaint in this action, GEICO obtained what it asserts to be "significant evidence" supporting its allegations that Barakat allowed unlicensed laypersons to illegally own and control the Barakat Practices. (Mot. to Stay at 7.) According to GEICO, Danoo Noor, Sr., a non-party to this action, was purportedly the office administrator tasked with creating and mailing bills and other documents on behalf of Barakat or the Barakat Practices. (*Id.*) Financial discovery, however, allegedly reveals that a month after the Barakat practices began billing GEICO for its services, multiple bank accounts purportedly controlled by Barakat were used by Noor to funnel hundreds of thousands of dollars to him. (*Id.*; *see* Garin Scollan Declaration ("Scollan Decl.") (Dkt. 24-2) ¶¶ 7-8; Barakat and Barakat Practices' Responses to Plaintiffs' First Set of Interrogatories ("Barakat Responses to IROGs") (Dkt. 24-4) at 10; *see also* Small Representative Sample of Checks Issued to Noor ("Noor Checks") (Dkt. 24-5); Signature Pages for MDX Solutions Group, Inc. and Orbitis Group LLC ("Noor Signatures") (Dkt. 24-6).)

GEICO also asserts that, following the submission of its opening brief to Defendants, it became aware of Noor's recent indictment

7

in this district for bank fraud and unlawful monetary transaction, where it is alleged Noor applied for a PPP loan through MDX Solutions Group, Inc.,—one of the companies for which Defendant Barakat is alleged to have paid tens of thousands of dollars—and used the funds to pay for his condominium in Florida. *See generally* Indictment (Dkt. 1) in *USA v. Noor*, 23-CR-00368 (FB) (CLP) (E.D.N.Y. 2023).

### D. Procedural History

On December 12, 2022, Plaintiffs filed the instant Complaint alleging 15 counts, including violations of the Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. § 1962(c), (d); common law fraud; and unjust enrichment. (Compl. ¶¶ 157-248.) It also seeks a declaration that Defendants have no right to receive payment for any unpaid bills submitted to GEICO. (Compl. ¶¶ 148-56.) On June 8, 2023, the court so-ordered a stipulation to stay and enjoin the insurance collection arbitrations through September 8, 2023 and on consent of the parties. (June 8, 2023 Order Granting Consent Motion to Stay and Enjoin Collection Proceedings (Dkt. 18).) This stipulation also included a preliminary injunction enjoining and restraining Defendants from submitting any new bills to GEICO in the names of the Barakat Practices or commencing any new arbitrations against GEICO on behalf of any of the Barakat Practices pending a final resolution of this action in federal court. (*Id.* ¶ 3.) The court granted consent motions to stay again on September 13, 2023, (Dkt. 20), and September 27, 2023, (Dkt. 22). On November 2, 2023, GEICO filed the instant motion to stay after the PC Defendants, Patriot Medical and JPB Medical, refused to agree to stay the pending arbitration proceedings for a fourth time. (*See* Mot. to Stay at 1.)

## II. LEGAL STANDARD

In determining whether to enjoin a proceeding or issue a stay, courts in this Circuit have employed the preliminary injunction standard. *See Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013); *see also Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005). Under this standard, "a movant must demonstrate (1) irreparable harm absent injunctive relief; and (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor." *Elzanaty*, 929 F. Supp. 2d at 217.[4] Plaintiffs must establish these elements by a preponderance of the evidence. *See AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc.*, 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010).

Courts in this Circuit—including this court—have consistently stayed proceedings in the context of similar no-fault insurance fraud schemes. *See, e.g., Gov't Emps. Ins. Co. v. Binns*, No. 22-CV-1553 (NGG) (PK), 2022 WL 4539361, at *10 (E.D.N.Y. Sept. 28, 2022); *Gov't Emps. Ins. Co. v. Landow*, No. 21-CV-1440 (NGG) (RER), 2022 WL 939717, at *14 (E.D.N.Y. Mar. 29, 2022); *Gov't Emps. Ins. Co. v. Relief Med., P.C.*, 554 F. Supp. 3d 482, 506 (E.D.N.Y. 2021); *Gov't Emps. Ins. Co. v. Wallegood, Inc.*, No. 21-CV-1986 (PKC) (RLM) (Dkt. 36), at 21 (E.D.N.Y. July 16, 2021); *Gov't Emps. Ins. Co. v. Beynin*, No. 19-CV-06118 (DG) (PK), 2021 WL 1146051, at *10 (E.D.N.Y. Mar. 25, 2021); *Gov't Emps. Ins. Co. v. Big Apple Med. Equip., Inc.*, No. 20-CV-5786 (PKC) (JRC) (Dkt. 52), at 22 (E.D.N.Y. Mar. 25, 2021); *Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*, 435 F. Supp. 3d 443, 456 (E.D.N.Y. 2020);

---

[4] "Likelihood of success is not the focus at the early stages of a case such as this, because any likelihood of success inquiry would be premature. Instead, the Court looks to whether there is a serious question going to the merits to make them a fair ground for trial." *Id.*

9

*State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 235 (E.D.N.Y. 2018).

### III. DISCUSSION

#### A. Irreparable Harm

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Elzanaty*, 929 F. Supp. 2d at 221. A party establishes irreparable harm when "there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002). The harm "must be shown to be actual and imminent, not remote or speculative." *Id.*

Courts in this district have found, in analogous cases, that "[i]rreparable harm occur[ed] where an insurer is required to waste time defending numerous no-fault actions when those same proceedings could be resolved globally in a single, pending declaratory judgment action." *Gov't Emps. Ins. Co. v. Moshe*, No. 20-CV-1098 (FB) (RER), 2020 WL 3503176, at *1 (E.D.N.Y. June 29, 2020); *see also Elzanaty*, 929 F. Supp. 2d at 222; *Gov't Emps. Ins. Co. v. Zaitsev*, No. 20-CV-03495 (FB) (SJB), 2021 WL 3173171, at *2 (E.D.N.Y. July 27, 2021); *Gov't Emps. Ins. Co. v. Mayzenberg*, No. 17-CV-2802 (ILG) (LB), 2018 WL 6031156, at *5 (E.D.N.Y. Nov. 16, 2018); *Wellmart RX*, 435 F. Supp. 3d at 449-50 (E.D.N.Y. 2020) (collecting cases).

GEICO argues that it will suffer irreparable harm absent a stay because it is faced with 43 pending arbitration proceedings filed by Defendants that could "potentially result in dozens of inconsistent awards before a multitude of arbitrators that will frustrate GEICO's attempt to obtain declaratory relief in this action." (Mot.

to Stay at 10.) Plaintiffs also assert that the Barakat Practices are likely insolvent because they have closed down active medical operations and have stopped billing GEICO, further demonstrating irreparable harm where a money damages award is "unlikely to provide adequate compensation" for the wrongdoing of the Barakat Practices. (*Id.* at 11-12 (quoting *Big Apple Med.*, No. 20-CV-05786, at 10).)

The PC Defendants argue that mere litigation expense and "potential" rather than imminent harm as alleged by GEICO are insufficient to warrant an injunction. (Opp. to Mot. (Dkt. 24-9) at 5.) In support of its argument, the PC Defendants rely on *Allstate Ins. Co. v. Harvey Fam. Chiropractic*, 677 F. App'x 716 (2d Cir. 2017) (Summary Order) and *Allstate Ins. Co. v. Avetisyan*, 17-CV-04275 (LDH) (RML), 2018 WL 6344249 (E.D.N.Y. Oct. 30, 2018) to demonstrate that past courts have denied similar motions on similar grounds. (Opp. to Mot. at 6-9.)

In *Harvey*, the Second Circuit affirmed a denial of a request to stay no-fault arbitrations and civil collection suits. 677 F. App'x at 718. But as this court and others in this Circuit have repeatedly held, reliance on *Harvey* is misplaced because (1) the panel's decision is a non-precedential summary order, (2) the decision fails to set out in detail the factual background relevant to its analysis, and (3) the decision does not address the risk of inconsistent outcomes or the risk that money damages might not be available where many of the PC Defendants are no longer in business. *See, e.g., Binns*, 2022 WL 4539361, at *7; *Landow*, 2022 WL 939717, at *12; *Relief Med.*, 554 F. Supp. 3d at 502; *Zaitsev*, 2021 WL 3173171, at *2 n.3; *Beynin*, 2021 WL 1146051, at *4; *Wellmart RX*, 435 F. Supp. 3d at 451; *Mayzenberg*, 2018 WL 6031156, at *5; *Gov't Emps. Ins. Co. v. Strutsovskiy*, No. 12-CV-330, 2017 WL 4837584, at *7 (W.D.N.Y. Oct. 26, 2017).

The PC Defendants' reliance on *Avetisyan* is erroneous for similar reasons. In *Avetisyan*, Judge DeArcy Hall denied a request to stay

11

and enjoin defendants from proceeding with or filing new no-fault collection actions because the pending claims in the state court collection actions were different from the claims alleged as fraudulent in the federal action. 2018 WL 6344249, at *4. Here, GEICO alleges that the "piecemeal" arbitration proceedings are "aimed at recovering the same No-Fault Benefits that are the subject of GEICO's declaratory judgment claim." (Mot. to Stay at 12.) Indeed, findings in favor of the Defendants in the arbitration proceedings absent evidence of the larger fraudulent scheme, and a ruling in favor of GEICO in this court with the benefit of voluminous discovery, would necessarily lead to numerous inconsistent outcomes.

Finally, the PC Defendants cite to two other cases, *Allstate Ins. Co. v. Zelefsky*, No. 13-CV-5830 (JFB) (AKT) (Dkt. 66) (E.D.N.Y. Apr. 2, 2014) and *Allstate v. E. Island Med. Care*, No. 16-CV-2802 (JFB) (AKT) (Dkt. 106) (E.D.N.Y. June 5, 2017), in which Judge Bianco issued oral rulings denying applications to enjoin the filing and prosecution of no-fault arbitrations. (Opp. to Mot. at 9.) Adopting its analysis from *Binns* where this court reviewed the transcripts of each decision, the court nevertheless found that "it cannot discern the specifics of those cases and is not in a position to analyze the rulings." *Binns*, 2022 WL 4539361, at *8. Consequently, this courts finds that both cases do not "color this court's analysis." *Wellmart RX*, 435 F. Supp. 3d at 452.

There are currently 43 pending arbitrations that run the risk of inconsistent judgments. And unlike in *Zelefsky* and *Eastern Island*, GEICO has shown that money damages may not be available if the Defendants are to prevail. This is sufficient to establish irreparable harm.[5] *See Wellmart RX*, 435 F. Supp. 3d at 449-50.

---

[5] The court notes that most cases in this area where a court granted a stay involved hundreds of pending cases in arbitration or state court; however, this court has not identified any decisions in which courts have held that

12

### B. Serious Question Going to the Merits

"The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). "District courts in the Second Circuit have generally found that likelihood of success is not the focus at the early stages of a case involving an alleged scheme to defraud an insurer of assigned no-fault benefits because any likelihood of success inquiry would be premature." *Relief Med., P.C.*, 554 F. Supp. 3d at 498 (collecting cases). Instead, "the Court looks to whether there is a serious question going to the merits to make them a fair ground for trial." *Elzanaty*, 929 F. Supp. 2d at 217; *Kotkes*, 2023 WL 4532460, at *10; *see also Parisien*, 352 F. Supp. 3d at 234; *Landow*, 2022 WL 939717, at *12; *Wellmart RX*, 435 F. Supp. 3d at 453.

Here, GEICO has shown, at a minimum, that there is a serious question going to the merits of its declaratory judgment claim. In its 73-page Complaint, supplemented by 87 pages of alleged fraudulent claims submitted by Defendants, GEICO pleads, with particularity, an extensive fraudulent scheme aimed at exploiting New York's no-fault insurance laws by misrepresenting billing codes, submitting claims for services that were medically unnecessary and illusory, billing according to a pre-determined protocol without regard for the Insureds specific circumstance, performing services pursuant to improper kickback and referral schemes, and violating various New York state licensing laws.

---

irreparable injury depends on the number of potentially inconsistent judgments. Further, Chief Judge Margo K. Brodie has found that as few as 39 pending arbitrations (and two civil court lawsuits) constitutes irreparable harm. *See Relief Med., P.C.*, 554 F. Supp. 3d at 502.

(*See generally* Compl.) GEICO supports these allegations with multiple exhibits attached to both the Complaint and the present motion. (*See generally id.*; Sample of Barakat's Claims; Sample of Patriot Medical's Claims; Sample of Patriot Medical's Claims; Mot. to Stay; Asmus Decl.; Barakat Responses to IROGs; Noor Checks; Noor Signatures; Small Representative Sample of Checks Relating to Barakat Funding ("Barakat Funding Checks") (Dkt. 24-7).)

The PC Defendants argue that GEICO has failed to establish that Dr. Noor was paid by Defendants or that Defendants paid kickbacks in exchange for access to patients to raise serious questions going to the merits. (*See* Opp. at 9-10.) But these arguments are unavailing. Even putting aside the pending indictment against Noor for bank fraud and past no-fault insurance lawsuits naming Barakat, the Complaint and exhibits demonstrate that there is a serious question going to the merits to make its claims a fair ground for litigation.

### C. Balance of Hardships

Since the court found that there are "serious questions going to the merits," the court must now determine whether the "balance of hardships tip[s] decidedly" in GEICO's favor. *Parisien*, 352 F. Supp. 3d at 234.

If this court issues a preliminary injunction and GEICO is unable to prove its claims on the merits, then "at worst" the PC Defendants' recovery of "the no-fault benefits to which they are entitled will be delayed." *Parisien*, 352 F. Supp. 3d at 234; *Wellmart RX*, 435 F. Supp. 3d at 455; *Kotkes*, 2023 WL 4532460, at *11.

The PC Defendants argue, nevertheless, that an injunction will inhibit their ability to recover and "Defendants would never receive payment even should they prevail." (Opp. to Mot. at 11.) The PC Defendants explain that the vast majority of New York no-fault insurance policies have a $50,000 maximum and that

14

these policies may be exhausted by the time this litigation resolves. (*Id.*) Judge Nina R. Morrison considered this same argument in *Kotkes* and found that it was merely hypothetical where, as here, the defendant "does not identify any policies nearing exhaustion." *Kotkes*, 2023 WL 4532460, at *11; *see also Moshe*, 2020 WL 3503176, at *3. In fact, should the Defendants prevail, they will be entitled to the collection of high rates of statutory interest on their outstanding no-fault claims. (Mot. to Stay at 21.) *See also Elzanaty*, 929 F. Supp. 2d at 222 (Defendant "will benefit from a stay if it ultimately prevails in this matter, because it will be entitled to the collection of interest at a rate of two percent every month that the No-Fault payments are overdue.").

Because granting a stay of the pending arbitrations will "actually save all parties time and resources," rather than adjudicating on a piecemeal basis with the potential for varying outcomes, the court finds the balance of hardships clearly tips in GEICO's favor. *Gov't Emps. Ins. Co. v. Cean*, No. 19-CV-2363 (PKC) (SMG), 2019 WL 6253804, at *5 (E.D.N.Y. Nov. 22, 2019); *see Elzanaty*, 929 F. Supp. 2d at 222 (finding that "all parties will benefit from having the issue of fraudulent incorporation determined in one action").

### D. Public Interest

GEICO asserts that the public interest is served by granting a stay of the pending arbitration proceedings. (*See* Mot. to Stay at 20-21.) Defendants do not address this point.

When analyzing the public interest prong, a court considers "the public consequences in employing the extraordinary remedy of injunction" and ensures that the "proposed injunction will not harm the public interest." *Relief Med.*, 554 F. Supp. 3d at 504.[6]

---

[6] The court notes that in this private dispute it need not determine whether the requested injunction will not harm the public interest. *See Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 183-84 (2d Cir. 2019).

Here, there is no indication that granting the stay will harm the public interest. To the contrary, GEICO asserts that the injunctive relief would serve the public policy against no-fault insurance fraud. (Mot. to Stay at 20.) Citing Judge Glasser's holding in *Mayzenberg*, Defendants emphasize that New York's No-Fault insurance laws were designed to protect accident victims and it is in the public interest to enforce these laws. 2018 WL 6031156, at *10. However, "allegations of fraud on our health care system" are all "too common" and thus preventing fraud is also in the public's interest. *Id.* Accordingly, this factor is neutral in the court's analysis. *See Gov't Emps. Ins. Co. v. Strut*, No. 19-CV-728 (JLS), 2020 WL 1820500, at *3 n.8 (W.D.N.Y. Apr. 10, 2020) (finding it was not required to consider the public interest but that in any event, the factor is neutral where there is a public interest in both enforcing New York's no-fault scheme and preventing fraud on the healthcare system).

In sum, Plaintiffs have alleged irreparable harm absent a stay, that there are serious questions going to the merits of this case, that the balance of hardships tip in their favor, and that a stay would not harm the public interest. The court therefore GRANTS Plaintiffs' motion for a preliminary injunction.

### E. Security for the Injunction

GEICO also asks the court to use its discretion to waive the security requirement of Fed. R. Civ. P. 65(c). Rule 65(c) provides that "the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Courts in this district have repeatedly concluded that claims of fraud pertaining to New York's no-fault insurance laws, and fraud against the healthcare system generally, implicate the "enforcement of public interests," an exception to Rule 65(c)'s

requirement of security. *See Wallegood*, No. 21-CV-01986, at 19-20; *Landow*, 2022 WL 939717, at *14.

This court has determined that a preliminary injunction will not result in prejudice to the PC Defendants such that security is necessary. Moreover, the court finds that a stay of the pending arbitration proceedings serves the public interest against no-fault insurance fraud. Accordingly, the Court WAIVES Rule 65(c)'s security requirement.

## IV. CONCLUSION

For the foregoing reasons, GEICO's motion to stay all pending no-fault insurance collection arbitrations by or on behalf of Defendants Patriot Medical and JPB Medical is GRANTED. GEICO's request that the court waive their obligation to post security is GRANTED.

SO ORDERED.

Dated:   Brooklyn, New York
         January 2, 2024

                                            s/Nicholas G. Garaufis
                                            NICHOLAS G. GARAUFIS
                                            United States District Judge